*LeChase Constr. Servs. LLC v. Argonaut Ins. Co.*

# United States Court of Appeals
# For the Second Circuit

August Term 2021

Argued:  June 6, 2022
Decided:  March 23, 2023

No. 21-1748

LECHASE CONSTRUCTION SERVICES, LLC,

*Plaintiff-Appellee,*

*v.*

ARGONAUT INSURANCE COMPANY,

*Defendant-Appellant,*

UNITED STRUCTURES OF AMERICA, INC.,

*Defendant.*

Appeal from the United States District Court
for the Western District of New York
No. 20-cv-6915, Elizabeth A. Wolford, *Judge.*

Before:      CALABRESI, LOHIER, and SULLIVAN, *Circuit Judges.*

Argonaut Insurance Company ("Argonaut") appeals from an order of the district court (Wolford, *J.*) remanding this breach-of-bond action, brought by LeChase Construction Services, LLC ("LeChase"), to New York state court after Argonaut removed it on the basis of diversity jurisdiction.  The district court purported to issue its remand order pursuant to 28 U.S.C. § 1447(e), which

authorizes remand if, after removal, a plaintiff joins defendants whose inclusion would destroy diversity jurisdiction. The district court expressly acknowledged that section 1447(e) is facially inapplicable here, as LeChase was not seeking to join a non-diverse defendant or otherwise contesting the existence of diversity jurisdiction. Nevertheless, the district court reasoned that, since remand would facilitate this case's consolidation with two related actions then pending in New York state court, thus conserving judicial resources and avoiding the risk of inconsistent outcomes, it was appropriate under the "rubric" of section 1447(e).

On appeal, we are primarily tasked with deciding two issues: (1) whether we have appellate jurisdiction over the district court's remand order notwithstanding 28 U.S.C. § 1447(d), which precludes review of remands based on the grounds specified in other subsections of section 1447; and (2) if we do, whether the district court issued such order in excess of its statutory authority under section 1447(e). We conclude, as a matter of first impression, that "[section] 1447(d) permits appellate review of a district-court remand order that dresses in [section 1447(e)'s] jurisdictional clothing a patently nonjurisdictional ground," such as the prudential considerations invoked by the district court here. *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 234 (2007) (reserving this question). Assured of our appellate jurisdiction, we conclude – for essentially the reasons acknowledged by the district court itself – that its remand order here was unauthorized under section 1447(e). As a result, we **VACATE** the district court's order, and **REMAND** the case for further proceedings.

VACATED AND REMANDED.

> KEVIN F. PEARTREE, Ernstrom & Dreste, LLP, Rochester, NY, *for Plaintiff-Appellee* LeChase Construction Services, LLC.
>
> CHAD W. FLANSBURG, Phillips Lytle LLP, Rochester, NY, *for Defendant-Appellant* Argonaut Insurance Company.

2

RICHARD J. SULLIVAN, *Circuit Judge*:

Argonaut Insurance Company ("Argonaut") appeals from an order of the district court (Wolford, *J.*) remanding this breach-of-bond action, brought by LeChase Construction Services, LLC ("LeChase"), to New York state court after Argonaut removed it on the basis of diversity jurisdiction. The district court purported to issue its remand order pursuant to 28 U.S.C. § 1447(e), which authorizes remand if, after removal, a plaintiff joins defendants whose inclusion would destroy diversity jurisdiction. The district court expressly acknowledged that section 1447(e) is facially inapplicable here, as LeChase was not seeking to join a non-diverse defendant or otherwise contesting the existence of diversity jurisdiction. Nevertheless, the district court reasoned that since remand would facilitate this case's consolidation with two related actions then pending in New York state court, thus conserving judicial resources and avoiding the risk of inconsistent outcomes, it was appropriate under the "rubric" of section 1447(e).

On appeal, we are primarily tasked with deciding two issues: (1) whether we have appellate jurisdiction over the district court's remand order notwithstanding 28 U.S.C. § 1447(d), which precludes review of remands based on the grounds specified in other subsections of section 1447; and (2) if we do,

3

whether the district court issued such order in excess of its statutory authority under section 1447(e). We conclude, as a matter of first impression, that "[section] 1447(d) permits appellate review of a district-court remand order that dresses in [section 1447(e)'s] jurisdictional clothing a patently nonjurisdictional ground," such as the prudential considerations invoked by the district court here. *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 234 (2007) (reserving this question). Assured of our appellate jurisdiction, we conclude – for essentially the reasons acknowledged by the district court itself – that its remand order here was unauthorized under section 1447(e). As a result, we **VACATE** the district court's order, and **REMAND** the case for further proceedings.

## I. BACKGROUND

LeChase was a contractor on a construction project described as the Cricket Valley Energy Project (the "Project") at a facility located in Dover, New York. LeChase subcontracted with United Structures of America, Inc. ("USA") to design and fabricate structural steel for the Project. USA, as principal, executed a Supply Bond (the "Bond") with Argonaut as surety for the amount of its agreement with LeChase. The Bond provided that, for LeChase to recover against Argonaut (as

4

surety) for any alleged default in performance by USA, LeChase must bring an action within one year of such default.

As of July 2, 2018, LeChase considered USA to be in default, for reasons that are neither clear from the record nor ultimately relevant to this appeal. In November 2019, LeChase submitted a claim on the Bond to Argonaut, which Argonaut denied as untimely per the terms of the Bond.

On June 23, 2020, Enerfab (a nonparty to this action) filed a complaint against LeChase in the Supreme Court of New York, Dutchess County (the "Enerfab Action"), asserting breach-of-contract claims based on LeChase's allegedly deficient performance relating to the Project.

On July 20, 2020, LeChase commenced *this* action against Argonaut and non-appealing defendant USA in the Supreme Court of New York, Monroe County. In October 2020, USA removed the action – with Argonaut's consent – to the Western District of New York, invoking diversity jurisdiction. A month later, LeChase moved to remand the case to the state court in Monroe County, pursuant to 28 U.S.C. § 1447. On July 1, 2021, the district court granted LeChase's motion

and remanded to the Monroe County court, invoking authority to do so under 28 U.S.C. § 1447(e).[1]

Argonaut timely appealed.[2]

## II.     STANDARD OF REVIEW

"We review an appeal from an order of remand de novo." *Agyin v. Razmzan*, 986 F.3d 168, 173–74 (2d Cir. 2021). Where "the question . . . on appeal is . . . whether the district court exceeded the scope of its [statutory] authority by issuing [a] remand order" on grounds not specified in the statute invoked as authorizing remand, we effectively are called upon to review the "district court's interpretation and construction of a federal statute," *Lively v. Wild Oats Mkts, Inc.*, 456 F.3d 933, 938 (9th Cir. 2006), which we likewise review de novo, *Fisher v. Aetna Life Ins. Co.*, 32 F.4th 124, 135 (2d Cir. 2022).

---

[1] Section 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."

[2] The parties stipulate that, two weeks *after* the issuance of the remand order, LeChase moved in state court (as it had averred it would in its papers on the remand motion) to have this case consolidated with the Enerfab Action in the Supreme Court of New York, Dutchess County. Consolidation failed, but the parties dispute the specifics of how it failed and whose fault that was. We need not resolve the parties' factual dispute over the post-remand proceedings in state court, however, as it is irrelevant to the issues before the Court here, namely:  (1) whether we have appellate jurisdiction to review the remand order at all; and (2) if so, whether that remand order, *at the time issued*, was in excess of the district court's statutory authority under 28 U.S.C. § 1447(e).

## III.   DISCUSSION

### A.   Appellate Jurisdiction

"We turn first, as we must, to the issue of our [appellate] jurisdiction." *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006). As the party asserting jurisdiction, Argonaut contends that we "ha[ve] appellate jurisdiction" and are "not precluded from" exercising it "pursuant to [section] 1447(d)." Argonaut Br. at 2, 13. LeChase disagrees, arguing that "[a]ppellate review of" the remand order below "is precluded by 28 U.S.C. § 1447(d)," LeChase Br. at 1, which provides that "[a]n order remanding a case to the [s]tate court from which it was removed is not reviewable on appeal" unless the case "was removed pursuant to [28 U.S.C. §§] 1442 or 1443," 28 U.S.C. § 1447(d).

The words of section 1447(d), read in a vacuum, would appear to support LeChase's position. The order that Argonaut asks us to review is plainly "[a]n order remanding a case to the [s]tate court from which it was removed." *Id.* The district court remanded this case to the Supreme Court of New York, Monroe County, the same state court from which Argonaut originally removed the action. It is likewise plain that this case was not "removed pursuant to section 1442 or 1443,"*id.*, but rather "under 28 U.S.C. § 1441(a)," J. App'x at 5. The plain text of section 1447(d) imposes no further conditions on, and allows no further exceptions

7

from, its bar on the appellate review of remand orders. It would therefore appear, on the surface of section 1447(d), that we lack appellate jurisdiction to review the district court's order remanding this case.

But the question of our appellate jurisdiction is not nearly so straightforward, because the Supreme Court has "interpreted" section 1447(d)'s prohibition on review "to cover less than its words alone suggest." *Powerex*, 551 U.S. at 229. Rather, the Court "has consistently held that [section] 1447(d) must be read in pari materia with" the rest of section 1447. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 638 (2009). In other words, its "prohibition on appellate review remains limited to remands based on the grounds specified" elsewhere in section 1447. *Powerex*, 551 U.S. at 230.

Argonaut, however, asserts that "[b]ecause this appeal is [from] an order of remand pursuant to [section] 1447(e), it is not precluded from appellate review pursuant to [section] 1447(d)." Argonaut Br. at 13. For that assertion, Argonaut relies on the Supreme Court's 1976 decision in *Thermtron Products, Inc. v. Hermansdorfer*, which held that "only remand orders issued under [section] 1447(c)" are "immune from review under [section] 1447(d)." 423 U.S. 336, 346 (1976) (emphasis added), *abrogated in part on other grounds by Quackenbush*

8

*v. Allstate Ins. Co.*, 517 U.S. 706 (1996), *and superseded by statute in relevant part as recognized in Wash. Suburban Sanitary Comm'n v. CRS/Sirrine, Inc.*, 917 F.2d 834 (4th Cir. 1990). But Argonaut's reliance on *Thermtron* is misplaced, as it overlooks the fact that when *Thermtron* was decided, there *was* no subsection (e) in section 1447. *See* 28 U.S.C. § 1447 (1976) (including only four subsections, (a) through (d)). It was not until 1988 that Congress amended the statute "to broaden subsection (c) and to *add subsection (e)*" – which has led "[e]very . . . circuit to consider the question" to conclude that section "1447(d) is equally an impediment to review of remands under [section] 1447(e) as it is to review of remands under [section] 1447(c)." *DeMartini v. DeMartini*, 964 F.3d 813, 819 & n.1 (9th Cir. 2020) (citing Judicial Improvements and Access to Justice Act of 1988, Pub. L. No. 100-702, § 1016(c)(2), 102 Stat. 4642, 4670 (codified as amended at 28 U.S.C. § 1447(e))) (emphasis added), *cert. denied*, 142 S. Ct. 92 (2021).[3] Argonaut has not suggested any reason to doubt the correctness of the Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits' unanimous consensus on this point. Nor do

---

[3] *Accord Elite Oil Fields Enters. v. Reed*, 979 F.3d 857, 865 (10th Cir. 2020); *Fontenot v. Watson Pharms., Inc.*, 718 F.3d 518, 520–21 (5th Cir. 2013); *Blackburn v. Oaktree Cap. Mgmt., LLC*, 511 F.3d 633, 636–37 (6th Cir. 2008); *Alvarez v. Uniroyal Tire Co.*, 508 F.3d 639, 641 (11th Cir. 2007); *In re Fla. Wire & Cable Co.*, 102 F.2d 866, 868–69 (7th Cir. 1996); *Wash. Suburban Sanitary Comm'n*, 917 F.2d at 836 n.5.

we see any reason for such doubt, given that the plain text of section 1447(d) draws absolutely no distinction between section-1447(c) remands and section-1447(e) remands. We therefore join our sister circuits in recognizing that Congress's 1988 amendments to section 1447 have superseded *Thermtron* and extended the reach of section 1447(d)'s bar on appellate review to cover remand orders under subsection (e) as well as those under subsection (c).

In this highly unusual case, however, that does not end the inquiry. Although the district court's order asserted that its remand was "pursuant to 28 U.S.C. § 1447(e)," the district court explicitly acknowledged that "section 1447(e) is not applicable here on its face." J. App'x at 249. Indeed, it is not.

Section 1447(e) authorizes remand "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject[-]matter jurisdiction," i.e., to join non-diverse defendants in a diversity case. 28 U.S.C. § 1447(e). Here, "[LeChase] d[id] not contest the existence of diversity jurisdiction" and was "not seeking to join a non-diverse defendant." J. App'x at 249. Instead, the district court reasoned that "[section] 1447(e) can serve as a basis to remand" this case "because there are currently two actions pending [in two different New York state courts] arising from disputes relating to the same

10

[construction] [p]roject" to which this case relates, such that "a failure to remand and consolidate" with those cases would "risk[] inconsistent outcomes and wasted judicial resources." *Id.* at 249–50.

Thus, even as the district court *recited* that its remand was pursuant to section 1447(e), its stated *grounds* for remanding – the avoidance of "inconsistent outcomes and wasted judicial resources," *id.* at 250 – were the principles of the *Colorado River* abstention doctrine, which allows "a federal court [to] abstain from exercising [its] jurisdiction" in certain "'exceptional circumstances' . . . when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources," *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817–18 (1976)).  Indeed, LeChase concedes that "[t]he [d]istrict [c]ourt's analysis, although not invoking the term, is on all fours with a *Colorado River* abstention analysis."  LeChase Br. at 28.

That is critical here.  In keeping with the principle that "only remands based on the grounds specified in" other subsections of section 1447 "are shielded by [section 1447(d)'s] bar on [appellate] review," *Powerex*, 551 U.S. at 229, the

11

Supreme Court has held that a "[d]istrict [c]ourt's abstention-based remand order does not fall" within the scope of section 1447(d), "as it is not based on lack of subject[-]matter jurisdiction or defects in removal procedure," *Quackenbush*, 517 U.S. at 712; *see also* 28 U.S.C. § 1447(c) (requiring remand "[i]f at any time before final judgment it appears that the district court lacks subject[-]matter jurisdiction," and requiring that motions to remand based on "defect[s]" in removal procedure be raised "within 30 days after the filing of the notice of removal"). Following the Supreme Court's holding in *Quackenbush*, we have long recognized that "[t]he question . . . is whether [the district court's remand rested on] a rule of subject[-]matter jurisdiction or rather a prudential doctrine of abstention. If the former, [section] 1447(d) precludes appellate review; if the latter, the appeal may lie." *Carvel v. Thomas & Agnes Carvel Found.*, 188 F.3d 83, 85 (2d Cir. 1999); *see also Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth.*, 435 F.3d 127, 131 (2d Cir. 2006) ("Despite the broad language of 28 U.S.C. § 1447(d) limiting appeal of remand orders, it is settled that section 1447(d) precludes appeal only of remand orders [based on] either a procedural defect asserted within [thirty] days of the filing of notice of removal or a lack of subject[-]matter jurisdiction." (footnotes omitted));

*Price v. J & H Marsh & McLennan, Inc.*, 493 F.3d 55, 59 (2d Cir. 2007) ("[An] abstention-based remand order [is] reviewable by court[s] of appeals.").

And so, to the extent that *Quackenbush* and its Second Circuit progeny control here, the remand order below – which walked and squawked just like an abstention analysis – is indeed reviewable on appeal. But in order to confirm that the *Quackenbush* line of cases *does* in fact control here, we must grapple with two antecedent questions. First, do those decisions survive Congress's broadening of section 1447, which suggests that "remands based on grounds specified in [section] 1447(c)" are no longer the "only remands" that "are immune from review under [section] 1447(d)"? *Quackenbush*, 517 U.S. at 712 (citation omitted). Second, is application of *Quackenbush* foreclosed here by the fact that the district court *purported* to be remanding "pursuant to [section] 1447(e)," J. App'x at 249, and never explicitly invoked the abstention doctrine that appears to have undergirded its actual reasoning? We address each of these questions in turn.[4]

---

[4] LeChase does not "spell out" these questions "squarely and distinctly" in its appellate brief, which – at most – gestures toward them only vaguely. *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)). "[W]e have an independent obligation to consider the presence or absence" of our "appellate jurisdiction . . . [nostra] sponte," *Joseph*, 465 F.3d at 89. That obligation is triggered "*whenever* a doubt arises as to the existence of [our] jurisdiction," *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278, (1977) (emphasis added) – even for reasons that "neither party has suggested," *Joseph*, 465 F.3d at 89. Thus, since *Quackenbush* would serve as the linchpin of our appellate jurisdiction here,

We start with the continuing viability of *Quackenbush*'s holding that "[section] 1447(d) [is] inapplicable" to a "[d]istrict [c]ourt's abstention-based remand order." 517 U.S. at 712. For that holding, the *Quackenbush* Court relied on *Thermtron*'s proposition that "only remands based on grounds specified in [section] 1447*(c)* are immune from review under [section] 1447(d)." *Id.* (quoting *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127 (1995) (citing *Thermtron*, 423 U.S. at 346)) (emphasis added). But as explained above, that proposition from *Thermtron* is no longer strictly accurate, as we now recognize that in light of Congress's subsequent amendments, "[section] 1447(d) is equally an impediment to review of remands under [section] 1447(e) as it is to review of remands under [section] 1447(c)." *DeMartini*, 964 F.3d at 819 n.1. Having now recognized section 1447(d)'s applicability to remand orders pursuant to subsections of 1447 *other than (c)*, we must ask whether this subsequent development somehow undermines *Quackenbush's* holding with respect to remands on abstention grounds.

We hold that it does not. Put simply, the "emerging consensus among the Circuit Courts of Appeal" that we now join, LeChase Br. at 26, has no bearing on

---

we may not proceed until we have put to rest any doubts about its continuing viability or its applicability to this case.

*Quackenbush*'s basic insight that discretionary abstention-based remands are *different in kind* from remands on any of the grounds invoked in the various subsections of section 1447.

For starters, abstention doctrines (and the prudential and policy considerations that animate them) have *never* been among the grounds for remand enumerated in the text of section 1447. *See Elite Oil Field Enters.*, 979 F.3d at 863–65 (tracing historical evolution of section 1447's text). And even as courts have taken a progressively more expansive view of section 1447(d)'s coverage, it continues to be true that the "only remands . . . shielded by [section 1447(d)'s] bar on review" have been those "based on the grounds specified in" other subsections of section 1447 *as it existed at the time of the remand*. *Id.* at 864 (quoting *Powerex*, 551 U.S. at 229 (citing *Thermtron*, 423 U.S. at 345–46)).[5] Thus, we see nothing to suggest

---

[5] That is, when section 1447 provided only for remand of cases that had been "removed improvidently and without jurisdiction," *Thermtron* "limited [section] 1447's application to such remands." *Powerex*, 551 U.S. at 229 (quoting *Thermtron*, 423 U.S. at 342 (quoting 28 U.S.C. § 1447(c) (1976))). When Congress broadened section 1447(c) to provide also for remands "on the basis of . . . defect[s] in removal procedure" or defects in "subject[-]matter jurisdiction" that become apparent *after* removal, the Supreme Court broadened its interpretation of section 1447(d) to cover remands on those newly enumerated grounds – but went no further. *Id.* (quoting Judicial Improvements and Access to Justice Act § 1016(c)(1), 102 Stat. at 4670; *see also id.* at 229–30 ("When that version of [section] 1447(c) was in effect, we thus interpreted [section] 1447(d) to preclude review *only* of remands for lack of subject-matter jurisdiction and for defects in removal procedure." (citing *Quackenbush*, 517 U.S. at 711–12; *Things Remembered*, 516 U.S. at 127–28) (emphasis added)). And now, it is only because Congress has further amended section 1447 to expressly provide for remand "[i]f after removal the plaintiff seeks to join additional defendants

that extending section 1447(d) to remand orders pursuant to subsections of 1447 other than (c) also opened the floodgates for section 1447(d) to be applied to remands based on grounds, such as abstention, that are nowhere mentioned in the text of *any* subsection of 1447. Given the well-settled rule of construction that section 1447(d) "is 'in pari materia' with" the rest of section 1447 and "must be construed together" with those "grounds for remand authorized by" and "in" its other subsections, *Stevens v. Brink's Home Sec., Inc.*, 378 F.3d 944, 948 (9th Cir. 2004), we are confident that *Quackenbush* and its progeny remain good law.

Support for this conclusion is found not only in section 1447's text, but also in its *logic*. As the Ninth Circuit explained in *DeMartini*, the crucial categorical distinction under section 1447(d) is – and always has been – between "remands . . . [that] are discretionary and therefore reviewable" and "remands . . . [that] are mandatory and therefore unreviewable." 964 F.3d at 819. Within that framework, it makes good sense that "[s]ection 1447(c) remands" (which "are mandatory") and "those under [section] 1447(e)" (which "are also mandatory"), *id.*, would be treated differently than remands pursuant to judge-made abstention doctrines

---

whose joinder would destroy subject[-]matter jurisdiction," that we have again broadened our reading of section 1447(d) to cover remands on that ground. Judicial Improvements and Access to Justice Act § 1016(c)(2), 102 Stat. at 4670.

(which are *always* discretionary in nature), *see, e.g., Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 523 (2d Cir. 2001) (characterizing *Colorado River* abstention as "discretion[ary]"). None of the out-of-Circuit cases that make up the "emerging consensus" invoked by LeChase, *see* LeChase Br. at 1, 26–27, have questioned the basic principle that discretionary remands are subject to appellate review and mandatory remands are not. Instead, they have simply "rejected" the "assert[ion] that remands pursuant to [section] 1447(e) *are* [in fact] discretionary and therefore reviewable." *DeMartini*, 964 F.3d at 819 (emphasis added). Accordingly, we now reaffirm that "[section] 1447(d) [is] inapplicable" to a "[d]istrict [c]ourt's abstention-based remand order," *Quackenbush*, 517 U.S. at 712, and that "[a]s a result, . . . remand orders based on . . . abstention doctrines[] are subject to appellate review," *Carvel*, 188 F.3d at 85.

Satisfied that *Quackenbush* and *Carvel* remain good law, we now consider whether they apply in cases where, as here, a district court performs an abstention-like analysis but nevertheless *purports* to be remanding pursuant to section 1447. In *Quackenbush*, the district court had candidly and openly characterized its remand order as an "exercise of *Burford* abstention," 517 U.S. at 710, and "explicitly" declined to "base[]" that order "on any ground specified in [section]

17

1447[]," *Garamendi v. Allstate Ins. Co.*, 47 F.3d 350, 352 (9th Cir. 1995), *aff'd sub nom. Quackenbush*, 517 U.S. 706. Similarly, the district court in *Carvel* had declined to invoke sections 1447(c) *or* 1447(e) in its remand order, *cf. generally In re Thomas & Agnes Carvel Found.*, 36 F. Supp. 2d 144 (S.D.N.Y. 1999), *aff'd sub nom. Carvel*, 188 F.3d 83, instead making explicit that it was "remand[ing] . . . in reliance upon" the abstention doctrine of "*Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456 [] (1939)," *Carvel*, 188 F.3d at 85.[6]

In this case, by contrast, the district court employed an abstention analysis that it ultimately wrapped in section-1447 packaging. After openly recognizing that "section 1447(e) is not applicable here on its face," the district court nevertheless *asserted* that it was remanding "pursuant to 28 U.S.C. § 1447(e)." J. App'x at 249. That, the district court explained, was justified because "other [district] courts have concluded that [section] 1447(e) can serve as a basis to remand cases" in which "a failure to remand and consolidate" with pending state-court actions "contain[ing] related factual and legal issues" would putatively "risk[] inconsistent outcomes and wasted judicial resources." *Id.* at 249–50 (citing

---

[6] To be sure, "the district court [in *Carvel* also] explicitly stated" – erroneously, but in apparent good faith – that it understood "*Princess Lida* [to] state[] a rule of subject[-]matter jurisdiction . . . rather [than] a prudential doctrine of abstention." *Carvel*, 188 F.3d at 85.

*Nnaji v. Fernandez*, No. 21-cv-1559 (KPF), 2021 WL 2433850, at \*1, \*3 (S.D.N.Y. June 15, 2021); *Mensah v. World Truck Corp.*, 210 F. Supp. 2d 320, 321–22 (S.D.N.Y. 2002); *Reyes v. Rite-Line Transp., Inc.*, No. 13-cv-968 (RWS), 2013 WL 3388975, at \*2–\*4 (S.D.N.Y. July 8, 2013); *Morze v. Southland Corp.*, 816 F. Supp. 369, 370 (E.D. Pa. 1993)).  As noted above, this analysis essentially amounted to an application of the *Colorado River* abstention doctrine.  *See Niagara Mohawk Power*, 673 F.3d at 100 (explaining *Colorado River*'s focus on "conserv[ing] judicial resources" and facilitating the "comprehensive disposition of litigation" in a single forum by abstaining during the pendency of "parallel state-court litigation" (quoting *Colorado River*, 424 U.S. at 817–18)).  And while the district court never acknowledged that it was in effect performing "a *Colorado River* abstention analysis" – or even so much as "invoke[ed]" *Colorado River*, LeChase Br. at 28 – there can be no doubt that that is in fact what the district court did.

We must therefore decide, as a matter of first impression, whether our appellate jurisdiction under section 1447(d) is controlled by what the district court *purported to be doing*, or by what the district court *was actually doing*.  In other words, we must decide a question that the Supreme Court flagged, but declined to "pass on," in *Powerex*:  "whether [section] 1447(d) permits appellate review of a

19

district-court remand order that dresses in jurisdictional clothing" – here, the "clothing" of section 1447(e) – "a patently nonjurisdictional ground" such as *Colorado River* abstention. 551 U.S. at 234.

The Supreme Court has provided little in the way of clear guidance on this question. "For [two] Members of th[e] [*Powerex*] Court, . . . that [a] [d]istrict [c]ourt *purported* to remand for lack of subject-matter jurisdiction [would] alone [be] enough to bar review under [section] 1447(d)." *Id.* at 233 (citing *Osborn v. Haley*, 549 U.S. 225, 264 (2007) (Scalia, J., joined by Thomas, J., dissenting)) (emphasis added). Yet elsewhere, majorities of the Supreme Court have "assum[ed]" – without deciding – that "[section] 1447(d) permits appellate courts to look behind the district court's characterization" of its remand order, *id.* (citing *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 641 n.9 (2006)), to determine whether "[w]hat the [d]istrict [c]ourt *actually* did . . . was to remand on nonjurisdictional grounds," *Kircher*, 547 U.S. at 649 (Scalia, J., concurring in part and concurring in the judgment) (emphasis in original). The most explicit guidance the Supreme Court *has* been willing to offer is that "when . . . the [d]istrict [c]ourt relied upon a ground that *is* colorably characterized as subject-matter jurisdiction, appellate review *is* barred by [section] 1447(d)." *Powerex*, 551 U.S. at 234 (emphasis added). But here,

20

we are faced with the inverse of that proposition – namely, whether appellate review is *not* "barred by [section] 1447(d)" when a district court remands on a ground that *cannot* be "colorably characterized as subject-matter jurisdiction." *Id.*; *see* J. App'x at 249 (district court acknowledging that LeChase neither "contest[ed] the existence of diversity jurisdiction" nor was "seeking to join a non-diverse defendant"). That, of course, is the very question that the Supreme Court expressly declined to "pass on" in *Powerex*. 551 U.S. at 234; *see also id.* (recognizing the difficulty of answering that question, given that "the line between misclassifying a ground as subject-matter jurisdiction and misapplying a proper ground of subject-matter jurisdiction is sometimes elusively thin").

Yet while our Court appears to be the first to be squarely presented with this question, others have weighed in on it in dicta and in non-controlling opinions. In his dissent in *Osborn*, Justice Scalia suggested that a district court's characterization of its own remand order "should . . . be[] the end of the matter" – "even if [the district court] was so badly mistaken that it misunderstood the true basis for its order[]." 549 U.S. at 264 (Scalia, J., dissenting) (citations omitted). In support of this position, Justice Scalia argued that "a searching inquiry into whether the [d]istrict [c]ourt's *real reason* for remand was lack of jurisdiction"

21

would "threaten[] to defeat the purpose of [section] 1447(d), which [is] 'to prevent delay in the trial of remanded cases by protracted litigation of jurisdictional issues.'" *Id.* (quoting Kircher, 547 U.S. at 650, *Thermtron*, 423 U.S. at 351) (emphasis in original; other internal quotation marks omitted).

On the other hand, the Ninth Circuit has taken the view that "[w]hen the district court characterizes its remand as 'resting upon lack of subject-matter jurisdiction' – as all [section] 1447(e) remands must – the appellate court" *may* perform a limited review to determine "whether the grounds of the remand order were colorably based on lack of subject-matter jurisdiction." *DeMartini*, 964 F.3d at 820 (quoting *Powerex*, 551 U.S. at 234). In support of that view, the Ninth Circuit has drawn a distinction between "review of whether the grounds of the remand order were colorably based on lack of subject-matter jurisdiction, which is permitted, [and] review of whether the remand was an acceptable exercise of such authority, which is not." *Id.* In particular, *DeMartini* reasoned that while "[i]t would negate [section] 1447(d) to hold . . . that a court may review the merits of a remand order when that court suspects *any* legal error," appellate courts "may" nevertheless "peek at the remand order as part of our 'jurisdiction to determine our own jurisdiction.'" *Id.* (quoting *Lively*, 456 F.3d at 937) (emphasis added; *see*

*also In re Cont'l Cas. Co.*, 29 F.3d 292, 294 (7th Cir. 1994) (holding that the Supreme Court's gloss on section 1447(d) "permits us to decide whether a district court has the power to do what it did, although we cannot examine whether a particular exercise of power was proper" (citing *In re Allstate Ins. Co.*, 8 F.3d 219 (5th Cir. 1993))).

For several reasons, we adopt the Ninth Circuit's approach over that urged by Justice Scalia in the *Osborn* dissent.

Most fundamentally, Justice Scalia's dissent in *Osborn* is openly premised on the view that the entirety of the Supreme Court's section-1447(d) jurisprudence from *Thermtron* onward has been a wrongheaded endeavor. *See generally* 549 U.S. at 262–65 (Scalia, J., dissenting); *see, e.g., id.* at 263 (criticizing *Thermtron* for "magically" changing "the unlimited phrase 'an order remanding a case'" to "bec[o]me 'an order remanding a case under *this* section [i.e., section 1447],'" thus unsettling "prior law[] under which the Court had held that the predecessors of [section] 1447(d) prohibited review of *all* remand orders" (emphasis added; alterations omitted)). If one viewed *Quackenbush* as a misguided step along the way to "eviscerat[ing]" the "venerable" view that section 1447(d)'s scope is "unlimited," then it would make perfect sense to limit its holding to remand

23

orders *openly* "predicated on abstention," *id.* at 262–63 – and to resist extending it to "remand order[s] that *dress[] in jurisdictional clothing*" their "patently nonjurisdictional ground[s]," *Powerex*, 551 U.S. at 234 (Scalia, J.) (emphasis added). It was Justice Scalia's prerogative to take that view of his own Court's precedents. But it is not ours.

As an "inferior Court[]," U.S. Const. art. III § 1, "we are not at liberty to depart from binding Supreme Court precedent 'unless and until the [Supreme] Court reinterprets' that precedent," *OneSimpleLoan v. U.S. Sec'y of Educ.*, 496 F.3d 197, 208 (2d Cir. 2007) (quoting *Agostini v. Felton*, 521 U.S. 203, 238 (1997)) (alterations omitted). And if *Quackenbush* was *right* to hold that "abstention-based remand order[s] do[] not fall" within the scope of section 1447(d), 517 U.S. at 712 – as we must assume it was – then it would hardly make sense to allow district courts to flout that holding simply by slapping the label of "section-1447(e) remand" onto what "patently" was an abstention analysis, *Powerex*, 551 U.S. at 234.

Furthermore, we find ample support in the Supreme Court's precedents – and our own – for distinguishing between "review of whether the grounds of the remand order were colorably based on lack of subject-matter jurisdiction" and

24

"review of whether the remand was an acceptable exercise of such authority."

*DeMartini*, 964 F.3d at 820. More to the point, we find ample support for concluding that the former is "permitted" as "part of our jurisdiction to determine our own jurisdiction." *Id.* (internal quotation marks omitted). Indeed, "it is familiar law that a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *see also Brownback v. King*, 141 S. Ct. 740, 750 (2021) (holding same). Thus, even when we are "jurisdictionally barred from reviewing" particular types of decisions by a lower court, *Sharkey v. Quarantillo*, 541 F.3d 75, 85 (2d Cir. 2008) – such as, "remand orders authorized" due to "either a procedural defect" in the underlying removal, a "lack of subject[-]matter jurisdiction," *Mitskovski*, 435 F.3d at 131, or a plaintiff's "seek[ing] to join additional defendants whose joinder would destroy subject[-]matter jurisdiction," 28 U.S.C. § 1447(e) – we "may nevertheless determine *whether* such a [decision] occurred," *Sharkey*, 541 F.3d at 85 (emphasis in original). Framed slightly differently, our "jurisdiction to determine [our] own jurisdiction," *Ruiz*, 536 U.S. at 628, allows us to "seek to determine what decision was made" in a remand order and whether that decision was of the general *type* shielded from appellate review by section 1447(d), *Sharkey*, 541 F.3d at 85. We

25

"simply" cannot inquire into "whether the decision was *correct*" or whether it was "a *proper* exercise of" the authority granted under sections 1447(c) and 1447(e) and made unreviewable by section 1447(d). *Id.* (emphasis added).

As a result, we conclude that we have appellate jurisdiction to review the remand order in this case, notwithstanding section 1447(d). In sum, while "[section] 1447(d) deprives us of jurisdiction to review remand orders that were issued pursuant to [section] 1447(e) *and that invoke the [jurisdictional] grounds specified in that subsection*," *DeMartini*, 964 F.3d at 819 (emphasis added), it is "inapplicable" to "abstention-based remand order[s]," *Quackenbush*, 517 U.S. at 712. And a district court cannot immunize such an order from appellate review by baldly reciting that it is issuing the order "pursuant to [section] 1447(e)," J. App'x at 249, or by otherwise attempting to "dress[]" its "patently nonjurisdictional ground[s]" in the "jurisdictional clothing" of sections 1447(c) or 1447(e), *Powerex*, 551 U.S. at 234.

## B.    Merits

Having confirmed our appellate jurisdiction, we now turn to the merits. The pertinent "question" at this stage of our analysis "is not whether the district court's remand order was correct, but whether the district court exceeded the scope of its [section] 1447([e]) authority by issuing the remand order in the first place."

26

*Lively*, 456 F.3d at 938; *see also Thermtron*, 423 U.S. at 345 n.9 ("[C]ases properly removed from state to federal court within the federal court's jurisdiction may not be remanded for discretionary reasons not authorized by the controlling statute."). We easily conclude that the district court exceeded its statutory authority.

The plain text of section 1447(e) authorizes district courts to "remand [an] action to the [s]tate court" only "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction" and the district court decides, in its discretion, to "permit [such] joinder." 28 U.S.C. § 1447(e). Here, as the district court openly acknowledged, "section 1447(e) is not applicable . . . on its face since [LeChase] is not seeking to join a non-diverse defendant." J. App'x at 249. Instead, the district court explicitly stated that it was remanding in the interest of "[a]voiding inconsistent outcomes" and "wasted judicial resources," *id.* at 250 – a "patently nonjurisdictional ground," *Powerex*, 551 U.S. at 234, that appears nowhere in the text of section 1447(e).

Unable to locate support for its rationale in the plain text of section 1447(e), the district court relied on a line of cases in which "*other* [district] courts ha[d] concluded that [section] 1447(e) can serve as a basis to remand" – "even where a [plaintiff is] not seeking to add a party whose [joinder] would destroy

subject[-]matter jurisdiction" – if "a failure to remand and consolidate" with pending state-court actions "contain[ing] related factual and legal issues" would putatively "risk[] inconsistent outcomes and wasted judicial resources." J. App'x at 249–50 (citing *Nnaji*, 2021 WL 2433850, at *1, *3; *Reyes*, 2013 WL 3388975, at *2–*4; *Mensah*, 210 F. Supp. 2d at 321–22; *Morze*, 816 F. Supp. at 370). But none of these district-court decisions reached us on appeal, and as a matter of first impression, we find their reasoning to be wholly unpersuasive.

The analysis in each of these cases is premised on the notion that "[s]ection 1447(e) . . . compels courts to *exercise discretion* when deciding whether to remand a case to state court by balancing the equities involved and weighing the interests and prejudices to each party involved." *Mensah*, 210 F. Supp. 2d at 322 (citing *Morze*, 816 F. Supp. at 370) (emphasis added); *see also Morze*, 816 F. Supp. at 370 (noting the "flexibility" that "[section] 1447(e) 'gives the court'" (quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure 2d § 3739 (Supp. 1990)) (other citation omitted)). That "confuses the nature of the district court's discretion under [section] 1447(e)." *DeMartini*, 964 F.3d at 819. Where section 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court *may*

28

deny joinder, *or* permit joinder and remand the action to the [s]tate court," 28

U.S.C. § 1447(e) (emphasis added), "it is the joinder that is discretionary, not the

remand," *DeMartini*, 964 F.3d at 820. That is, "once the diversity-destroying

defendant has been joined under that subsection, the district court's only option is

to remand. Likewise, if the district court does not join the diversity-destroying

defendant, [section] 1447(e) does not authorize remand." *Id.* at 819.

Beyond its fundamental misunderstanding of the discretion that is – and is

not – afforded district courts under section 1447(e), this "emerging doctrine in

[d]istrict [c]ourts [of] the Second Circuit concerning [the] application of 28 U.S.C.

§ 1447(e)," LeChase Br. at 12, is sharply at odds with "the virtually unflagging

obligation of the federal courts to exercise the jurisdiction given them," *Colorado*

*River*, 424 U.S. at 817. In recognition of that principle, we have insisted on a "heavy

presumption" against "[a]bstention from the exercise of federal jurisdiction,"

*Niagara Mohawk Power*, 673 F.3d at 100, 104 (quoting *Colorado River*, 424 U.S. at 813),

where "animate[d]" by such prudential considerations as "judicial economy" and

"avoid[ing] duplicative simultaneous litigation," *De Cisneros v. Younger*, 871 F.2d

305, 308 (2d Cir. 1989). More concretely, we have held that "[i]n abstention

cases, . . . the district court's discretion must be exercised within the narrow and

29

specific limits prescribed by the particular abstention doctrine involved," such that "there is little or no discretion to abstain in a case which does not meet traditional abstention requirements." *Niagara Mohawk Power*, 673 F.3d at 99 (citation omitted); *cf. Cavanaugh v. Geballe*, 28 F.4th 428, 432–33, 435 (2d Cir. 2022) (holding similarly in connection with *Younger* abstention). In the context of *Colorado River* abstention, that means that district courts must carefully consider each of "six factors," and "[w]here [any such] factor is facially neutral, that is a basis for retaining jurisdiction, not for yielding it." *Id.* at 100–01 (internal quotation marks omitted). Likewise, we have warned that "our review" of abstention decisions is "somewhat rigorous." *Id.* at 99 (citation omitted). Thus, to allow district courts to import "the value of judicial economy that animates *Colorado River*," *De Cisneros*, 871 F.2d at 308, into "the rubric of section 1447(e)," *Mensah*, 210 F. Supp. 2d at 322, would be to invite an end-run around the rigors of our caselaw following *Colorado River*. We decline to do so.[7]

---

[7] To the extent LeChase's appeal rests on the ground that *Colorado River* abstention was appropriate, LeChase Br. at 28–30, we decline to affirm for this reason given that the abstention doctrine permits only a stay or dismissal of the federal proceeding and not a remand back to the state court, *see Niagara Mohawk Power*, 673 F.3d at 100, and the lower court did not carefully and clearly apply the *Colorado River* factors to make the required showing of "exceptional circumstances," *id.* at 100–01. We invite the lower court, however, to address the issue on remand should it believe that *Colorado River* abstention is warranted in the present case.

As a result, we find it clear that "the district court exceeded its [section-]1447([e]) authority in ordering [its] remand" on the abstention-like grounds set forth therein, and we must therefore "vacate the order." *Lively*, 456 F.3d at 942.

## IV. CONCLUSION

To sum up, there is no question we have appellate jurisdiction, for the reasons our opinion explains. The line of district court cases tracing back to *Mensah*, 210 F. Supp. 2d 320, is based on an improper application of 28 U.S.C. § 1447(e). The rule we announce today is that district courts may not disguise an abstention analysis as a section-1447(e) analysis. The text of section 1447(e) forecloses a remand for reasons related to policy or judicial economy. Instead, district courts should apply section 1447(e) only when a "plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction," 28 U.S.C. § 1447(e).

Accordingly, we **VACATE** the district court's order remanding this case to the Supreme Court of New York, Monroe County, and **REMAND** the case to the district court for further proceedings in that court.

31